**WALDEN MACHT & HARAN** LLP

250 Vesey Street
27th Floor
New York, NY 10281

wmhlaw.com
T: 212-335-2030
F: 212-335-2040

January 13, 2023

<u>Via ECF</u>

Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:   *Cequel Communications, LLC v. MOX Networks, LLC,* No. 21-CV-5577

Dear Judge Buchwald:

    On behalf of Plaintiff Cequel Communications, LLC d/b/a Suddenlink Communications, we write to respectfully ask the Court for assistance resolving a discovery dispute between the parties regarding expert disclosures. Counsel for both parties have met and conferred in good faith but have been unable to resolve the dispute on their own.

    For the reasons stated below, the Court should grant Cequel's request to rebut or respond to the affirmative opinions included in MOX's rebuttal expert report. If the Court grants Cequel's request, Cequel further requests three weeks to prepare the proposed responsive report and three additional weeks for the parties to depose the relevant experts.

    MOX has informed Cequel that it does not consent to Cequel's requests. For the Court's consideration and convenience, MOX's position is additionally set forth below.

    **I.**   **Cequel's Position Regarding Discovery Dispute Concerning the Report of Dr. Daniel Peterson**

    On December 15, 2022, MOX served the report of Dr. Daniel Peterson, which purports to respond to the report of Cequel's expert, Mr. Helmut Knehr, served on October 15, 2022. Although labeled a "rebuttal," Dr. Peterson's report contains affirmative opinions that go beyond challenging the methodology, analysis, or opinions in Mr. Knehr's report, and expresses affirmative findings on certain issues central to this matter that are not tied to Mr. Knehr's conclusions.

    Accordingly, Cequel seeks to serve an expert report rebutting solely the affirmative opinions in Dr. Peterson's report. To avoid involving the Court in a discovery dispute, and unnecessary litigation expense, Cequel requested MOX's consent to rebut Dr. Peterson's report for this limited purpose, in advance of serving such report. MOX did not consent.

    The Court should allow Cequel to respond to Dr. Peterson's report. Dr. Peterson's report contains affirmative disclosures to which Cequel is authorized to rebut under Rule 26(a)(2)(D).

*[Handwritten annotation in right margin: "Application granted. [signature] Naomi Reice Buchwald, USDJ 1/17/23"]*

Alternatively, this Court should exercise its discretion to grant Cequel leave to respond.

### 1. Background

The dispute between Cequel and MOX concerns an agreement between the parties, granting MOX an indefeasible right of use of a fiber optic cable route (the "Agreement"). Under the Agreement, MOX agreed to pay Cequel for constructing the route using fiber optic cable purchased and supplied by MOX (the "Cable").

Cequel claims that MOX breached the Agreement by declining to pay Cequel after Cequel constructed and delivered the route to MOX. Cequel also claims that MOX supplied Cequel with defective and/or nonconforming Cable for use in building the route. MOX counterclaims that the route failed to meet the performance requirements specified in the Agreement, and that this failure was due to alleged substandard construction practices.

### 2. Rule 26 Authorizes Cequel to Rebut Dr. Peterson's Report

Cequel's expert, Mr. Knehr, opined in his report that the Cable that Mox supplied did not conform with industry standards, after conducting a physical assessment of the Cable. He further opined regarding what would be reasonable performance requirements for a route built with the nonconforming Cable. MOX's "rebuttal" expert does not challenge these opinions. Instead, Dr. Peterson asserts an affirmative opinion, which is improper in a rebuttal report.

Rather than challenge Mr. Knehr's analysis or opinions, Dr. Peterson opines that no issues were discovered on the route that would be indicative of nonconforming Cable, and therefore Mr. Knehr's opinion is irrelevant. The issues that Dr. Peterson discusses relate to loss of optical signal between points where different lengths of cable have been fused, or "spliced," together. These are so-called "mid-span" issues. Cequel's position in this litigation is that mid-span issues occurred on the route as a result of nonconforming Cable supplied by MOX, but Mr. Knehr does not opine on the existence or prevalence of mid-span issues.

To support MOX's position that Cequel's construction was allegedly substandard, Dr. Peterson opines that test data shows only splice point and other issues indicative of allegedly poor construction, not any mid-span issues evidencing nonconforming Cable. Mox's counsel provided over 400 test files to Dr. Peterson to analyze that were not included with Mr. Knehr's report. Although Dr. Peterson also analyzed 14 test files and 2 spreadsheets summarizing test data that were attached to Mr. Knehr's report, Mr. Knehr did not rely upon them, assess them, or analyze them, let alone for the purposes that Dr. Peterson now purports to use them. Out of an abundance of caution, Cequel disclosed with Mr. Knehr's report all materials broadly "considered" by Mr. Knehr, though not necessarily assessed or relied upon by him, as required by Rule 26(a)(2)(B), which includes the 14 test files and summary spreadsheets.

Because Dr. Peterson's opinion is tantamount to an affirmative expert disclosure, under Rule 26(a)(2)(D), Cequel is authorized to serve a rebuttal report addressing Peterson's methodology and opinion that no mid-span issues occurred on the route. *See Jakobovits as Tr. of Lite Tr. I v. PHL Variable Ins. Co.*, 2022 WL 17415078, at *4 (E.D.N.Y. Dec. 5, 2022) (finding that rebuttal report actually expressed affirmative opinions because it "only 'rebuts' [defendant's experts] in the broad sense that they advance theories at odds with [those experts]").

In response to our request for consent to serve a rebuttal to Dr. Peterson's report, MOX has argued that counsel for Cequel instructed Mr. Knehr to assume that mid-span issues occurred on the route, and therefore Dr. Peterson's report rebuts Mr. Knehr's report. But that assumption

was neither assessed nor examined by Mr. Knehr in his analysis. Mr. Knehr opines that he would expect to see mid-span issues on a route built with the nonconforming Cable that MOX supplied. Dr. Peterson's report, as discussed above, does not opine on whether the Cable was nonconforming, or what one would expect to see as a result of nonconformance. Contrary to MOX's assertion, Dr. Peterson's report seeks to support MOX's case-in-chief alleging that issues on the route were the result of substandard construction practices.

Further, there is a judicial preference for adjudicating on the merits, which favors allowing Cequel to respond to the affirmative opinions in the Peterson report. *See In re Specialist & Other Vessel Owner Limitation Actions*, 2020 WL 8665287, at *2 (S.D.N.Y. June 30, 2020) (allowing rebuttal to improper rebuttal report and observing that "exclusion of expert testimony is a drastic remedy which is inconsistent with the judicial preference for determination of issues on the merits." (citation omitted)). There would indeed be no prejudice to MOX of Cequel rebutting Dr. Peterson's report. *See Jakobovits*, 2022 WL 17415078, at *4 (considering prejudice). Depositions have yet to be scheduled, so MOX will have ample time to assess Mr. Knehr's contemplated rebuttal and question Mr. Knehr about same.

### 3. Alternatively, the Court Should Grant Leave to Respond

Even if Dr. Peterson's report is a proper rebuttal, this Court should grant Cequel leave to respond. Rule 26(a)(2)(D) "vest[s] discretion in the court to determine how many rounds of disclosures are appropriate." *Palatkevich v. Choupak*, 2014 WL 5463371, at *2 (S.D.N.Y. Oct. 22, 2014). Dr. Peterson, in his report, addresses new matters, presents new test data, and uses a new methodology to assess that test data, as discussed above.

Cequel should be allowed to respond to Dr. Peterson's new material and methodology, including the reliability and accuracy of Dr. Peterson's inferences. As discussed above, there would be no prejudice to MOX, and granting Cequel leave to respond would facilitate a determination of the case on the merits, instead of by limiting expert testimony. *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 2021 WL 4190628, at *11 (S.D.N.Y. Aug. 18, 2021) (observing that "where a rebuttal report relies on a new methodology or approach, the door for a reply report opens," and allowing such a report because it appropriately responded to new tests in a rebuttal report, there was minimal prejudice, and the Federal Rules favor an adjudication on the merits (citation and alterations omitted)).

If the Court grants Cequel's request to respond to Dr. Peterson's report, Cequel further requests that the Court order a deadline of three weeks from the date of the Court's decision on this discovery dispute for Cequel to serve the proposed response and three weeks from service for the parties to complete depositions of Dr. Peterson and Mr. Knehr.

## II. MOX's Position Regarding Discovery Dispute

MOX has provided the following regarding its position on this dispute to include with Cequel's request:

> Cequel's attempt to reply to Dr. Peterson's rebuttal report is an attempt to correct mistakes and oversights in its initial expert report. The Court should deny leave to reply to Dr. Peterson's report.

3

1.  **Dr. Peterson's Report Was Within the Scope of a Rebuttal Because It Refuted the Evidence and Assumptions in Mr. Knehr's Report.**

Dr. Peterson's rebuttal report challenged the factual assumptions that supported Mr. Knehr's opinions. It did not raise new matters that Mr. Knehr had not considered. Cequel appears to suggest that Dr. Peterson could not disagree or argue with the assumptions made by Mr. Knehr—which form the fundamental basis of Cequel's claims—without converting his rebuttal report into an affirmative report. That is simply incorrect. Dr. Peterson's report was therefore within the proper scope of a rebuttal report.

Mr. Knehr's report hinges on the key assumption that between "August 2019 through 2020, Cequel found attenuation events . . . between splice points on that route," which are known as "mid-span" events. Exhibit A, Knehr Report at ¶I.15.e.[1] For his report, Mr. Knehr explained that he had "specifically relied on or considered the information and materials referenced below" in forming his opinions. *Id.* at ¶I.6. Among those documents he relied on are test evidence in spreadsheets that he claimed "record[ed] various attenuation events . . . on the route and the location of those events." *Id.* at ¶I.16.e–f. Additionally, Mr. Knehr relied on emails and attachments from March 2020 "between Cequel employees sharing examples of mid-span . . . losses." *Id.* at ¶I.16.g–h. This evidence cited by Mr. Knehr's report supported his assumption that mid-span losses occurred during that timeframe. Moreover, it laid the basis for Mr. Knehr's conclusion that he would expect to see precisely such mid-span loss events occur based on the alleged defect he identified on a short piece of leftover cable retrieved from Cequel's contractors. *Id.* at ¶¶V.53 ("Because I would expect to see multiple mid-span attenuation events in a build using the Cable, an attenuation specification accounting for the performance of the Cable would be greater than the specification from Exhibit C1."); VIII.61 ("Based on the information provided in the product specification sheet, the Factory Test Reports, and the results of testing on a sample of Cable, I believe that the attenuation loss events described in the documents provided to me are unsurprising.").

Dr. Peterson's report exposed the weaknesses behind this unreliable assumption. Exhibit B, Peterson Rebuttal Report at ¶V.35–46 (discussing how the data that Mr. Knehr relied on showed an excessive amount of losses at splice points rather than mid-span loss events, which suggests poor installation practices rather than a defective cable design). To reach his conclusion, Dr. Peterson noted that the spreadsheets, emails, and attachments Mr. Knehr had relied on did not show that any mid-span losses occurred. *Id.* at ¶V.43–46. Dr. Peterson also confirmed that other test data and fiber traces that Mr. Knehr failed to review showed no mid-span attention losses. *Id.* at ¶VI.56. Given this assessment, Dr. Peterson opined that Mr. Knehr "based his analysis on an incorrect premise" that mid-span attenuation events existed. *Id.* at ¶V.41. And "[t]his led to irrelevant cable testing and an incorrect conclusion regarding the causal relationship between the existence of mid-span events and cable tension." *Id.*

At its core, Dr. Peterson's report "intended solely to contradict or rebut *evidence*" that supported the premise underlying Mr. Knehr's report and, indeed, Cequel's case-in-chief. Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added). Rebuttal evidence is proper "when it will explain, repel,

---

[1] Exhibits A and B are annexed without their corresponding appendices and exhibits due to volume.

4

counteract or disprove the *evidence* of the adverse party." *Scott v. Chipotle Mex. Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (emphasis added) (quotation omitted). Mr. Knehr cited and relied on evidence that supported his assumption about mid-span losses. Dr. Peterson disputed that assumption by first opining about the evidence Mr. Knehr cited and then offering other evidence to confirm that Mr. Knehr's assumption was incorrect. In short, Dr. Peterson limited his opinion to attacking the credibility and reliability of Mr. Knehr's report by examining the evidence underlying Mr. Knehr's assumptions. *See Busher v. Barry*, No. 14-cv-4322, 2017 WL 11697989, at *3 (S.D.N.Y. June 22, 2017) (finding that a rebuttal report was responsive when it "attacks the credibility of the [expert] Report largely based on methodology and procedure").

Rule 26 allows Cequel to reply to Dr. Peterson's report only if "it raise[d] new matters not discussed in the initial reports." *Ironshore Ins. Ltd. v. W. Asset Mgmt. Co.*, No. 11 Civ. 5954, 2013 WL 2051863, at *3–4 (S.D.N.Y. May 15, 2013). Rather than inject new issues into his report, Dr. Peterson simply criticized the methodology (assumptions) behind Mr. Knehr's analysis with evidence. *See id.* (finding that a rebuttal report did not raise a new issue by offering new evidence to merely refute an expert's analysis that the defendants had bought too risky of investments). And because Mr. Knehr relied on and cited evidence that supported his assumption, this is not a case when a rebuttal report latched onto an issue the initial report had "fail[ed] to discuss." *Jakobovits as Tr. of Lite Tr. Ins. v. PHL Variable Ins. Co.*, ---F. Supp. 3d---, 2022 WL 17415078, at *4 (E.D.N.Y. 2022).

Still, Cequel vaguely claims that Dr. Peterson's report "presents new test data[] and uses a new methodology to assess that test data." Even if true, those facts alone do not create grounds for Cequel to reply. *See Media Glow Digital, LLC v. Panasonic Corp. of N. Am.*, No. 16 Civ. 7907, 2019 WL 1055527, at *6 (S.D.N.Y. Mar. 6, 2019) (finding that a rebuttal expert report did not raise new arguments when it offered evidence not mentioned in the opening report that undermined the opening report's opinion that a sign was of good quality); *Busher*, 2017 WL 11697989, at *3 (denying a reply to a rebuttal report that offered an appraisal based on new methodology).

In all, Dr. Peterson's rebuttal report covered "the same subject matters encompassed in" Mr. Knehr's report. At its core, Mr. Knehr's report argued that the cable provided by MOX was both defective and the likely cause of alleged mid-span loss events that led to the network's failure to meet the attenuation specifications in the parties' Agreement. Dr. Peterson's rebuttal report opined that Mr. Knehr confused any alleged causal relationship between the cable and attenuation events by relying on unreliable assumptions. Cequel has no right under Rule 26 to reply to Dr. Peterson's rebuttal report.

### 2. Granting Leave to Respond Will Offer Little to Clarify the Issues in this Case and Will Serve Only to Bolster Mr. Knehr's Initial Report.

Although the Court has the discretion to grant leave to respond to Dr. Peterson's report, the Court should decline to do so for two reasons. First, Mr. Knehr already offered evidence about mid-span attenuation. Exhibit A, Knehr Report at ¶I.16.e–g. That evidence, as Dr. Peterson pointed out, does not support Mr. Knehr's mid-span loss assumptions. Courts bar experts from replying to rebuttal reports when the reply simply corrects oversights or includes information that

should have been in the initial report. *See Lidle v. Cirrus Design Corp.*, No. 08 Civ. 1253, 2009 WL 4907201, at *4 (S.D.N.Y. Dec. 18, 2009) (citations omitted). Granting leave would therefore serve only to bolster Mr. Knehr's methodological assumptions rather than correct for new evidence.[2] *See Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 212 (S.D.N.Y. 2021) (rejecting an expert's "addendum" that offered new explanations of evidence that the expert was already aware of when he served his initial expert report).

Second, granting leave to respond will prolong expert discovery, increase costs on MOX, and encourage motion practice. Granting leave to respond without first seeing a draft of the responsive report will not prevent Mr. Knehr from including opinions in his response that merely bolster his initial conclusion. *See Lidle*, 2009 WL 4907201, at *5 (rejecting a reply rebuttal report that "merely rehashes the conclusions in [the] opening report" when a reply was allowed "only with respect to [one particular topic]."). To prevent against this, MOX would therefore need to file a motion to exclude or to strike the responsive report. In sum, Cequel seeks leave to respond without conditions and without providing a draft of the report. The Court should reject Cequel's request for leave.

If the Court grants Cequel's request for leave, MOX asks that the Court proceed with the proposed expert discovery schedule outlined in Cequel's January 11 letter to the Court, which the Court so ordered yesterday. ECF Nos. 40, 41. MOX does not agree that a proposed response from Cequel should extend expert discovery beyond the new schedule set by the Court. *Id.*

\*   \*   \*

Thank you for your consideration and attention to this matter.

Respectfully submitted,

/s/ Avni Patel
Avni P. Patel

cc:   All counsel of record (via ECF)

---

[2] Notably, although Mr. Knehr's report is dated October 15, 2022, the testing performed at his behest occurred in February 2021 and predates the filing of this action by Cequel in April 2021. As such, Mr. Knehr has had more than ample time to request and review evidence he deemed necessary to form his opinions. Cequel should not now be rewarded with an opportunity to correct mistakes and oversights in a report that it had over a year and eight months to prepare just because MOX's expert disputed the basis of Mr. Knehr's assumptions and opinions.