

250 Vesey Street
27th Floor
New York, NY 10281

wmhlaw.com
T: 212-335-2030
F: 212-335-2040

May 8, 2023

**Via ECF**

Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: *Cequel Communications, LLC v. MOX Networks, LLC,* No. 21-CV-5577

Dear Judge Buchwald:

  On behalf of Plaintiff Cequel Communications, LLC, we respectfully request a pre-motion conference pursuant to the Court's Individual Rule 2(B) regarding Cequel's anticipated motion to exclude the testimony of Defendant MOX Networks, LLC's expert, David McNamara. Cequel also requests that the Court adjourn *sine die* the current May 30, 2023 deadline to submit pre-motion letters regarding dispositive motions until the Court has decided the motion to exclude. Mr. McNamara's report (the "Report")[1] falls far short of the rigorous standards for admissibility under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceutical Inc.*, 509 U.S. 579 (1993). Resolving this motion now will help the Court efficiently resolve the parties' dispute, as it will inform the issues on which Cequel moves for summary judgment.

  **I.** **Relevant Background**

  Pursuant to the parties' Dark Fiber IRU and Construction Agreement (the "Agreement"), MOX agreed to pay Cequel to construct an approximately 250-mile fiber route using fiber optic cable that MOX supplied (the "Route"). Cequel claims that MOX breached the Agreement by refusing to pay Cequel for its work after Cequel finished and delivered the Route and Mox accepted it. Cequel further claims that MOX supplied Cequel with faulty fiber optic cable, which caused performance issues and costly troubleshooting for Cequel. MOX counterclaims that Cequel's construction practices were substandard and caused performance issues. The Report contains two opinions: (i) Cequel's practices did "not meet accepted industry standards" at "every stage" of the build, and (ii) performance issues on the Route and its failure to meet specifications were "a direct result" of those substandard practices, Report ¶¶ 8, 31, 33-34.

  **II.** **The Report Is Unreliable, Biased, and Speculative**

  The Court should exercise its "gatekeeping" function to exclude the Report because it rests on an unreliable foundation and fails to assist the trier of fact, as required by Rule 702 and *Daubert*.[2] MOX cannot meet its burden for two independent reasons.[3] First, the Report is a conduit for the opinions of a MOX representative with no independent analysis of those opinions. Second, the Report deploys unsound methods and ipse dixit, skipping numerous steps necessary

---

[1] The Report is attached hereto as **Exhibit A**.

[2] *In re KIND LLC "Healthy & All Natural" Litig.*, 2022 WL 4125065, at *6 (S.D.N.Y. Sept. 9, 2022) (Buchwald, J.).

[3] *See id.* (holding that proponent of expert testimony has burden of establishing admissibility).

to reliably assess Cequel's practices while also contradicting its own analysis.

### 1.   The Report's Analysis of MOX's Internal Reports

The Report's "parroting" of another's analysis is improper and inadmissible testimony.[4] In forming his opinions, Mr. McNamara reviewed and relied upon two PowerPoint reports titled "project" and "field inspections," which MOX solely prepared (the "MOX Reports").[5]  Tr.[6] 213:12–215:13.  The MOX Reports contained 67 photos that MOX cherrypicked and annotated to highlight alleged issues with Cequel's construction practices.  MOX representatives took the photos, chose which to include in the MOX Reports, and annotated the photos with headings and red arrows purporting to identify such issues.

Mr. McNamara did not independently evaluate the photos in the MOX Reports, nor did he speak with whoever prepared these reports.  Tr. 194:20–196:3.  Mr. McNamara conceded that he was influenced by MOX's annotations; in fact, he admitted that the red arrows MOX drew "influence[d]" him because "[i]t's hard not to notice the red arrows."  Tr. 195:5-12.  He requested additional photos from MOX but was told that "these were the photos that were available."  Tr. 158:18-20.  The parties have produced over 600 photos in discovery for the 250-mile Route; and yet, Mr. McNamara reviewed only the 67 that MOX handpicked.  The Report, in sum, reaches no independent opinions regarding these photos; instead, it copies MOX's biased conclusions.[7]

To the extent the Report includes any independent analysis, that analysis is far too shaky and "conjectural" to pass muster.[8]  First, Mr. McNamara did not conduct any field measurements or other on-site inspection activities, which he admitted would be necessary to reliably confirm the purported issues identified in the MOX Reports.  Tr. 199:9-17.  Second, Mr. McNamara failed to verify that the photos actually depicted the Route; even assuming they did, he admitted that the 67 photos were insufficient to show the condition of the whole Route.  Tr. 159:21–160:7, 167:4–168:6; *see* Gallo Rebuttal ¶¶ 20-27.[9]  Third, Mr. McNamara did not verify when the photos were taken.  Tr. 168:7–169:3.  The timing is critical because conditions and applicable standards for a route under construction will differ from a finished route—like inspecting a new building before the flooring is even installed.[10]  *See* Gallo Rebuttal ¶¶ 28-35.

### 2.   The Report's Analysis of Test Data and Splices

Mr. McNamara's other analysis is also utterly unreliable.  The Report analyzes Optical Time Domain Reflectometer ("OTDR") test data that Cequel's contractors generated.  OTDR tests measure the power loss of an optical signal sent over a fiber optic cable, akin to measuring

---

[4] *Brown v. Mermaid Plaza Assocs., LLC*, 2016 WL 5802779, at *11 (E.D.N.Y. July 20, 2016), *report & recommendation adopted*, 2016 WL 5716414 (E.D.N.Y. Sept. 30, 2016).

[5] The "project" and "field inspections" reports are attached as **Exhibit B** and **Exhibit C**.

[6] "Tr." refers to the Deposition of David McNamara on February 13, 2023.  Excerpts are attached as **Exhibit D**.

[7] In *Brown*, for example, the court excluded a construction expert on ADA compliance because, as here, he failed to do his own independent evaluation of the conclusions reached in an employee's report on which the expert relied and he did not verify that the employee report was accurate and complete.  2016 WL 5802779, at *11.

[8] *Baker v. Urb. Outfitters, Inc.*, 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003).

[9] The Expert Rebuttal Report of Ernest Gallo (the "Gallo Rebuttal") is attached as **Exhibit E**.

[10] *See, e.g.*, *Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*, 2003 WL 21108232, at *2 (S.D.N.Y. May 14, 2003) (excluding construction expert who opined that issues were not caused by faulty workmanship because he failed to offer a reliable testing methodology or sufficient empirical evidence).

its performance. Mr. McNamara—based only on reviewing this data and estimating the number of splices (fusions of two fiber segments) on the Route—opines that performance issues seen in the data were caused by substandard installation practices. Report ¶ 23.

As a threshold bar to admissibility, Mr. McNamara failed to conduct the steps necessary to reliably determine what caused the purported performance issues.[11] OTDR test data alone cannot reveal the quality of a construction team's installation practices: Mr. McNamara would also have had to do a thorough field analysis. This field analysis would first determine where along the Route the test failed, then physically inspect the fiber optic cable for damage or other indicia of what caused the failure. *See* Gallo Rebuttal ¶¶ 40-47. Mr. McNamara did not do *any* field analysis. Without it, his methodology is untested and based on sheer speculation.

Even so, Mr. McNamara failed to reliably apply his own (unsound) methodology. Mr. McNamara admitted that issues consistent with faulty fiber optic cable, not poor construction, appeared in the test data. He thus repudiated his opinion that all the issues he observed in the test data were caused by substandard construction practices. Tr. 267:6-18. Moreover, Mr. McNamara reviewed only a tiny, unrepresentative sample out of hundreds of test results, which he admittedly chose "arbitrarily" for primarily one of the four sections of the Route.[12] Tr. 108:20-24. Mr. McNamara did not review documentation or test results relating to most of the 250-mile Route, nor did he review documentation relating to "every stage" of the project, which Mr. McNamara opines were *all* substandard. Tr. 119:2–120:17.

Finally, Mr. McNamara failed to review *any* actual techniques, methods, or equipment Cequel used to build the Route. Tr. 47:10–48:14, 150:16–152:7. He specifically requested information on Cequel's construction practices—including photos of splice trays, field notes, crew logs, safety information, information about underground portions, and other documents—which he agreed would have been important in forming his opinion. Tr. 33:15–34:8, 69:23–70:3, 95:20-24, 127:13–128:20. He also failed to identify any applicable industry standards that he used, relying instead on a "general understanding" and an irrelevant instruction manual from a *different* fiber optic cable.[13] Tr. 64:25–67:25, 69:3–70:3.

The Report entirely fails to deploy a sound and reliable methodology that could sustain the broad opinions therein about Cequel's construction practices.

Respectfully submitted,

*/s/ Avni Patel*
Avni P. Patel

cc:   All counsel of record (via ECF)

---

[11] *See Great N. Ins. Co. v. Power Cooling, Inc.*, 2007 WL 4688411, at *18 (E.D.N.Y. Dec. 18, 2007) (excluding opinion because expert failed to substantiate opinion that discolorations of turbines were caused by certain chemicals and skipped necessary tests but, instead, conclusorily asserted the potential cause). The Report discusses instances of "frogging"—replacing a nonperforming section of the Route with a new, short segment, thereby increasing the number of splices—but likewise fails to rule out faulty cable as the reason "frogging" was used. Report ¶¶ 28, 31.

[12] *See Apple v. Atl. Yards Dev. Co., LLC*, 2015 WL 11182422, at *8 (E.D.N.Y. Mar. 31, 2015) (excluding testimony because expert failed to analyze representativeness of sample and collecting cases).

[13] *See May v. Ruby Tuesday, Inc.*, 2014 WL 4966544, at *3 (N.D.N.Y. Oct. 2, 2014) (excluding architect's opinion on whether a restaurant was built using standard practices because, among other reasons, architect did not identify the standards for "good architectural practice"); *see* Gallo Deposition Tr. 72:4–74:13 (attached as **Exhibit F**).